803 F.2d 604
 In re PARADYNE CORPORATION, John D. Applegate, Kenneth M.
Barry, Verney L. Brown, Francis A. Dolan, Cletus
L. Gardenhour, George B. Pressly, Jorge
O. Suarez, and Robert S.
Wiggins, Petitioners.
In re F. William SIEGRIST, Petitioner.
 Nos. 86-3504, 86-3532.
 United States Court of Appeals,
Eleventh Circuit.
 Oct. 14, 1986.
 
 James L. Slattery, Paradyne Corp., Largo, Fla., F. Whitten Peters, Williams & Connolly, Eva M. Petko, Barry S. Simon, Washington, D.C., for Paradyne.
 Gerald A. Feffer and Dianne J. Smith, Williams & Connolly, Washington, D.C., for Wiggins.
 Raymond G. Larroca, Miller, Cassidy, Larroca & Lewin, Washington, D.C., for Applegate.
 Sachs, Greenebaum & Taylor, Thomas Hylden, Washington, D.C., for Dolan.
 Mark Pizzo, Asst. Fed. Public Defender, Tampa, Fla., for Barry.
 James Kynes, Winkles, Trombley & Kynes, P.A., Stuart Markman, Tampa, Fla., for Brown.
 Terry A. Smiljanich, Blasingame, Forizs and Smiljanich, St. Petersburg, Fla., for Gradenhour.
 Morris Weinberg, Carlton, Fields, Ward, Emmanuel, Smith & Cutler, Tampa, Fla., for Pressly.
 Cicero, Lund & Williams, P.A., Tampa, Fla., for Suarez.
 Paul L. Friedman, White & Case, G. William Currier, Kathleen A. Ley, Washington, D.C., for Siegrist.
 Andrew Grosso, Asst. U.S. Atty., Tampa, Fla., for the U.S.
 Petitions for Writ of Mandamus to the United States District Court for the Middle District of Florida.
 Before HILL, KRAVITCH and ANDERSON, Circuit Judges.
 
 BY THE COURT:
 
 1
 Paradyne Corporation and eight individual co-defendants in a pending criminal case seek a writ of mandamus ordering the district court to refrain from various actions proposed in response to government motions to disqualify defense counsel. Primarily, petitioners challenge the district court judge's announced plans to interview, in camera and outside the presence of counsel, individual defendants, witnesses, and attorneys in order to determine whether defense counsel received information protected by the attorney-client privilege of various individuals. Petitioners also request a transcript of an ex parte presentation made to the court by the government in support of its motion to disqualify. In a companion case, co-defendant William Siegrist seeks identical relief, and asks additionally that the district court be ordered to conduct a hearing pursuant to United States v. Garcia, 517 F.2d 272 (5th Cir.1975), so that Siegrist may waive his right to conflict-free counsel. Because the procedures proposed by the district court to determine the existence and scope of alleged conflicts of interest would constitute serious and unwarranted incursions on constitutional rights of defendants, a writ of mandamus must issue.
 
 I.
 
 2
 The controversy arises out of the December 1985 indictment of Paradyne and the individual defendants on charges related to a $100 million government contract awarded to Paradyne in 1981. Under the terms of the contract, Paradyne was to replace and upgrade a computer communications system between the field offices and the main office of the Social Security Administration. The indictment contains various charges related to an alleged conspiracy to defraud the government by falsely representing that Paradyne then had available a computer system meeting the requirements specified by the Social Security Administration.[1] Similar allegations previously had been raised in a civil suit filed against Paradyne in 1981 by the Securities and Exchange Commission and settled in 1985 with no admission of liability by Paradyne. A second civil suit stemming from the disputed contract, a shareholder class action filed in 1983 against Paradyne and various individuals, currently is pending before a different district court judge than is presiding over the criminal case.
 
 
 3
 The petition for mandamus was prompted by a motion filed by the government on April 1 for disqualification of defense attorneys due to alleged conflicts of interest arising from the various combinations of law firms that represented Paradyne and its employees in different aspects of the civil and criminal litigations. During the grand jury stage of the criminal investigation, Paradyne and those employees classified by the government as "targets" of the investigation were represented by the two firms that also represented Paradyne and certain employees in the SEC civil suit and in the pending sharehold class action. These two firms ("Paradyne's civil counsel") withdrew from the criminal case around the time of the indictment, and Paradyne and the individual defendants all now retain independent counsel.[2] The government alleges essentially that the current defense counsel face conflicts of interest because they may have received from Paradyne's civil counsel information that is subject to the attorney-client privileges of unindicted individuals who were "targets" of the criminal investigation.[3]
 
 
 4
 In its challenge to counsel for Siegrist, the government asserts the additional claim that Siegrist's attorney previously represented potential government witnesses, and hence faces an actual conflict of interest as to these individuals. Although initially classified as a "target" of the investigation, Siegrist was downgraded to "witness" status in August 1985. He at that time became represented by his current counsel, who had been retained to represent the 24 Paradyne employees classified as "witnesses."[4] This attorney continued to represent Siegrist after Siegrist was again reclassified in October as a "target," and after he was indicted. The other "witnesses" have now retained independent counsel, and all but two have signed waivers of their attorney-client privileges to permit Siegrist's counsel to cross-examine them at trial. Siegrist does not deny that his counsel faces a conflict arising from the prior representation of these witnesses. In March, prior to the filing of the government's motion to disqualify, Siegrist filed a motion for a Garcia hearing in order to waive his right to conflict-free representation and maintain his current counsel.
 
 
 5
 In urging that defense counsel be disqualified for possible conflicts of interest, the government has presented no direct evidence that any individual's attorney-client privilege has been breached. Rather, the government contends that a distinct likelihood for violations of the privilege arises out of the relationships between Paradyne and the firms that have served as counsel.[5] The government claims that current defense counsel face irresolvable conflicts of interest because they would not be able to use privileged information in cross-examining witnesses. Similarly, the government argues that the close working relationship between Paradyne's civil and criminal counsel would result in an actual conflict of interest should civil counsel be called to testify regarding the charges of perjury and obstruction of justice filed against several of the defendants. The government further contends that the possession of privileged information by defense counsel--particularly in light of their denial that the information is in fact privileged--so taints their representation of defendants that disqualification is required to maintain the integrity of the judicial system.[6]
 
 
 6
 The government presented these accusations in its April 1 motion and in an ex parte presentation to court on May 15. On June 23, the court proposed to conduct a series of hearings to determine: (1) what attorney-client relationships existed between Paradyne's civil counsel and various individuals involved in the case; (2) which individuals have waived their attorney-client privileges with these firms; (3) whether privileged information has been disseminated to defense counsel by Paradyne's civil counsel; (4) the extent to which Siegrist's counsel suffers a conflict of interest in his representation of Siegrist; and (5) whether Siegrist can effectively waive his right to conflict-free representation. The court announced that on successive days it would conduct in camera interrogations of potential witnesses and government personnel involved in the case, of defense attorneys, and of defendants.
 
 
 7
 The court subsequently informed counsel that the questioning would be much like a grand jury hearing, outside of the presence of counsel or witnesses. Those questioned would be permitted only to go outside chambers to confer with their counsel before answering specific questions. Although the court proposed to formulate its questions based on suggestions by the counsel for each side, counsel would not be permitted to cross-examine witnesses or to present their own witnesses or other evidence.
 
 
 8
 The court rejected defense objections to the proposed procedure but stayed the proceedings while defendants sought a writ of mandamus from this court. In the petition for the writ, Paradyne and the individual co-defendants ask this court either (1) to order the district court not to hold the proposed hearings and to deny the motions to disqualify, or (2) to prohibit the court from conducting the hearings as currently contemplated. They also seek to obtain a transcript of the May 15 ex parte presentation. Siegrist, in addition, seeks an order requiring the district court to conduct a Garcia hearing so that he may waive his right to conflict free counsel.
 
 
 9
 In opposing the disqualification hearings, all defendants except Siegrist claim primarily that, even if the government's assertions that privileged materials have been disseminated are true, current defense counsel cannot face a conflict of interest in this case because none has ever represented either potential witnesses or other defendants. Moreover, they contend that the contemplated in camera, ex parte hearings pose serious threats to the fifth and sixth amendment rights of the defendants. Siegrist admits that his counsel faces a conflict arising out of prior representation of two potential witnesses, but he argues that the procedures outlined in Garcia, supra, are sufficient to permit him to effect a knowing voluntary waiver of his right to conflict-free counsel.
 
 II.
 
 10
 The sixth amendment's guarantee of assistance of counsel in criminal prosecutions includes both a right to effective representation free from conflicts of interest, e.g., Cuyler v. Sullivan, 446 U.S. 335, 100 S.Ct. 1708, 64 L.Ed.2d 333 (1980), and a more limited right to representation by counsel of one's choice, see, e.g., Glasser v. United States, 315 U.S. 60, 70, 62 S.Ct. 457, 465, 86 L.Ed. 680 (1942); United States v. Padilla-Martinez, 762 F.2d 942, 946 (11th Cir.), cert. denied, --- U.S. ----, 106 S.Ct. 320, 88 L.Ed.2d 302 (1985). In United States v. Garcia, supra, the former Fifth Circuit established a procedure by which trial courts are to resolve the tension between these two rights that arises when defense counsel faces a conflict of interest.[7] Adopting a framework similar to that provided by F.R.Crim.Pro. 11 for determining the voluntariness of a guilty plea, the Garcia court instructed that:
 
 
 11
 the district court should address each defendant personally and forthrightly advise him of the potential dangers of representation by counsel with a conflict of interest. The defendant must be at liberty to question the district court as to the nature and consequences of his representation. Most significantly, the court should seek to elicit a narrative response from each defendant that he has been advised of his right to effective representation, that he understands the details of his attorney's possible conflict of interest and the potential perils of such a conflict, and that he has discussed the matter with his attorney or if he wishes with outside counsel, and that he voluntarily waives his Sixth Amendment protections.
 
 
 12
 517 F.2d at 278.
 
 
 13
 Despite this clearly delineated and well established procedure to enable defendants to waive in open court their sixth amendment right to counsel free of conflict,[8] the district court below proposed to subject defendants, witnesses, and attorneys to a series of examinations closed to everyone but the judge, a court reporter, and the individual being questioned. The government contends that the proposed hearings do not violate any specific constitutional rights of the defendants. We disagree. In our view, this unprecedented program of in camera, ex parte inquisitions is so clearly at odds with the principles of the open, adversarial system of justice guaranteed by our Constitution that the district court's contemplated actions without question endanger the defendants' rights. See In re Taylor, 567 F.2d 1183, 1187-88 (2d Cir.1977). Moreover, the rationales relied upon by the district court and urged by the government cannot justify subjecting the defendants to the proposed proceedings. Indeed, we believe that the order of the district court and the arguments of the government demonstrate fundamental misunderstandings of the nature of the sixth amendment right to representation free from conflicts of interest and of the correlative right of defendants to maintain counsel of their choice despite the existence of a potential conflict.
 
 
 14
 The principal basis of the government's motion for disqualification and of the district court's order is the notion that defense counsel possibly possess information that is subject to the attorney-client privilege of various witnesses and defendants. Assuming arguendo that the government's allegations are true,[9] we fail to see how current defense counsel could suffer any conflicts of interest arising from the possession or the use of privileged information that was disclosed by counsel no longer directly participating in the case.
 
 
 15
 At the heart of all previous cases involving disqualification due to conflicts of interest is the recognition that an attorney has divided loyalties when the interests of one client are adverse to those of another current or former client. When cross-examining a former client, for example, an attorney is under conflicting professional mandates both to represent the current client zealously, see ABA Model Code of Professional Responsibility EC 7-1, and to maintain the confidences of the former client, Model Code EC 4-1. Under such circumstances, the concern of the sixth amendment is not that the attorney-client privilege of the witness might be breached,[10] but that the defendant might not receive effective representation due to "the danger that counsel may overcompensate and fail to cross-examine fully for fear of misusing his confidential information." United States v. Jeffers, 520 F.2d 1256, 1265 (7th Cir.1975) (Stevens, J.), cert. denied, 423 U.S. 1066, 96 S.Ct. 805, 46 L.Ed.2d 656 (1976).
 
 
 16
 Except for counsel for Siegrist, none of the current defense attorneys in this case faces such an ethical dilemma, for their loyalties lie solely with their current clients.[11] Divulging the confidences of a client constitutes an ethical violation because the client is owed a duty of confidentiality.[12] The government has not explained, however, how defense counsel here might similarly commit an ethical violation either by possessing or using information supplied by individuals whom they never represented. Although it states bluntly that a conflict of interest might arise from a "duty to protect the confidences of a third person," the government has failed to support this assertion with either case law or a convincing rationale.[13] Nor has the government demonstrated why current defense counsel would face a conflict in questioning Paradyne's civil counsel.[14] Because the conflict of interest alleged by the government cannot exist, the court's principal purpose for holding ex parte hearings is without foundation.[15]
 
 
 17
 The government similarly is mistaken in arguing that in camera, ex parte hearings are necessary because the defendants' sixth amendment rights can be vindicated only if the defendants are fully aware of the actual impact of the conflicts confronting their attorneys. Secret hearings are essential, the government contends, if the court is both to uncover all the details of the alleged conflicts and to protect any privileged information. The fallacy of this argument becomes apparent in light of the sixth amendment's correlative right to retain counsel of one's choice despite the existence of a conflict of interest.
 
 
 18
 In arguing that secret hearings are necessary to protect both the defendants' sixth amendment right to conflict-free counsel and the confidentiality of privileged information, the government evades the inevitable dilemma that will confront the court once the details of any conflict are discovered: the court either would have to disclose privileged information or disqualify defense counsel on grounds that the defendants could not be made sufficiently aware of the specific dangers posed by their current representation. Thus, to maintain the secrecy that the government urges is so significant, the court would have to disqualify counsel despite the possible desire of the defendants to retain them regardless of any impairments.
 
 
 19
 Such a result, however, would be at odds with the very purpose of a constitutional provision designed to insure that individuals confronted by the prosecutorial machinery of the government are "able to invoke the procedural and substantive safeguards that distinguish our system of justice." Cuyler v. Sullivan, supra, 446 U.S. at 343, 100 S.Ct. at 1715; see, e.g., Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963). The logical consequences of the government's argument would transform the sixth amendment right to conflict-free counsel into a two-edged sword with which the government would be able to sever defendants from those most able to protect their legitimate legal interests.[16]
 
 
 20
 Fortunately, the sixth amendment right to representation unimpaired by conflict of interest does not require the perverse result that the government's theory would yield. For, contrary to the government's assertions, a defendant need not be aware of every detail of a conflict of interest to be able effectively to waive the right.[17] Indeed, Garcia makes clear that an otherwise valid waiver is effective if the defendant "understands the details of his attorney's possible conflict and the potential perils of such conflict." 517 F.2d at 278 (emphasis added). As Garcia and subsequent cases demonstrate, the right to conflict-free counsel, the public's interest in a fair trial, and the government's interest in precluding reversal of a conviction all are adequately protected if defendants are informed both that their representation might be adversely affected in certain ways and that they have the right to counsel unimpaired by any conflict.[18]
 
 
 21
 Garcia requires that a court conduct a " 'penetrating and comprehensive examination' " to determine the validity of a defendant's attempted waiver of the sixth amendment right to conflict free counsel. 517 F.2d at 278 (quoting Van Moltke v. Gillies, 332 U.S. 708, 723, 68 S.Ct. 316, 323, 92 L.Ed. 309, 321 (1948)). But it does not permit the court to subject defendants to procedures that would violate other constitutional rights. As the Supreme Court has stated:
 
 
 22
 What were contrived as protections from the accused should not be turned into fetters....
 
 
 23
 ... When the administration of the criminal law ... is hedged about as it is by the Constitutional safeguards for the protection of the accused, to deny him in the exercise of his free choice the right to dispense with some of these safeguards is to imprison a man in his privileges and call it the Constitution.
 
 
 24
 Adams v. United States ex rel. McCann, 317 U.S. 269, 275, 63 S.Ct. 236, 240, 87 L.Ed. 268 (1942), quoted in Faretta v. California, 422 U.S. 806, 815, 95 S.Ct. 2525, 2531, 45 L.Ed.2d 562 (1975). Accordingly, the in camera, ex parte hearings proposed by the district court must be prohibited, and Siegrist must be afforded a Garcia hearing to permit him to waive his right to conflict-free counsel.
 
 III.
 
 25
 In addition to asking that this court prohibit the hearings as contemplated by the district court, petitioners also seek to obtain transcripts of an ex parte presentation made to the district court by the government in support of its motion to disqualify. We agree with petitioners that due process requires that they have access to the transcript.
 
 
 26
 Although ex parte conferences are not per se unconstitutional, they "should occur but rarely, especially in criminal cases." United States v. Adams, 785 F.2d 917, 920 (11th Cir.1986); see also Code of Judicial Conduct for United States Judges, Canon 3(A)(4) ("A judge should ... neither initiate nor consider ex parte ... communications concerning a pending or impending proceeding."). Ex parte communications generally are disfavored because they conflict with a fundamental precept of our system of justice: a fair hearing requires "a reasonable opportunity to know the claims of the opposing party and to meet them." Morgan v. United States, 304 U.S. 1, 18, 58 S.Ct. 773, 776, 82 L.Ed. 1129 (1938). Thus, even when ex parte conferences are justified as, for example, a necessary means to resolve fears of intimidation of a witness, e.g., Adams, supra, or a juror, e.g., United States v. Gagnon, 470 U.S. 522, 105 S.Ct. 1482, 84 L.Ed.2d 486 (1985); United States v. Watchmaker, 761 F.2d 1459 (11th Cir.1985), cert. denied, --- U.S. ----, 106 S.Ct. 879, 88 L.Ed.2d 917 (1986), a transcript of the encounter usually is provided to insure that one party has not gained any unfair advantage before the court. See Gagnon, 105 S.Ct. at 1483; Watchmaker, 761 F.2d at 1466; cf. Adams, 785 F.2d at 920 & n. 2 (ex parte conference with witness not improper where counsel aware of transcript but did not request copy). Similarly, to ameliorate any unfair advantage--or the appearance thereof--that might have resulted from the ex parte presentation at issue here, the transcript must be made available to petitioners.
 
 IV.
 
 27
 Mandamus is a drastic remedy, "to be invoked only in extraordinary situations." Kerr v. United States District Court, 426 U.S. 394, 402, 96 S.Ct. 2119, 2123, 48 L.Ed.2d 725 (1976). It is appropriate only "to remedy a clear usurpation of power or abuse of discretion," In re Extradition of Ghandtchi, 697 F.2d 1037, 1038 (11th Cir.1983), and when no other adequate means of obtaining relief is available, United States v. Fernandez-Toledo, 737 F.2d 912, 919 (11th Cir.1984).
 
 
 28
 These standards are met here. The district court has proposed a procedure that not only in itself would violate constitutional rights of the defendants, but also likely would result in the improper disqualification of defense attorneys, thereby delaying once again resolution of this case in contravention of the defendants' rights to a speedy trial. Moreover, to refuse defendants access to the information presented to the court ex parte would subject them to a trial unaware of the accusations leveled against them and their attorneys.
 
 
 29
 Accordingly, it is ORDERED that the district court refrain from conducting any in camera, ex parte hearings as contemplated in its June 23 order; that the court hold for petitioner Siegrist a hearing in open court pursuant to the standards established in United States v. Garcia, supra; and that the court make available to defendants the transcripts of the May 15 ex parte conference. The transcripts are to remain sealed.
 
 
 
 [1]
 Of the nine individuals named as defendants, only Kenneth M. Barry is not a present or former officer or employee of Paradyne. Barry was a Social Security Administration officer involved in the computer contract awarded to Paradyne
 
 
 [2]
 Counsel for one of the individual defendants recently has joined the law firm of counsel for another of the defendants. A motion filed pursuant to Fed.R.Crim.Pro. 44(c) to consider the multiple representation of these defendants is not an issue in this petition
 
 
 [3]
 Two prior "targets" of the investigation were not indicted. One testified before the grand jury under a grant of immunity, and is expected to be a principal prosecution witness. Shortly after the government filed its motion to disqualify, Paradyne filed a motion, currently pending, asking the court to determine the scope of this individual's attorney-client privilege with respect to Paradyne's civil counsel. Paradyne's present criminal counsel states that until the motion is decided they will not obtain from Paradyne's civil counsel any materials possibly protected by the attorney-client privilege of this individual. The second former "target" has not been granted immunity and remains under investigation. Petitioners and the government dispute whether this individual will be a trial witness, and, if so, whether he will claim a privilege related to representation by Paradyne's civil counsel
 
 
 [4]
 During the investigation, the government was aware of the arrangements for representation of Paradyne and the individuals designated as "targets" and "witnesses." Subpoenaes and other documents were directed to the respective firms
 
 
 [5]
 The government argues principally that Paradyne's civil counsel continue to participate in the criminal case as "de facto co-counsel." The government asserts that the firms have cooperated with Paradyne's current criminal counsel in attempting to evade the scope of court-imposed limitations on criminal discovery by issuing a subpoena in the pending civil case to a government attorney involved in the criminal prosecution. The government urges that improper "collusion" was further indicated in a conversation, overheard by a government attorney, in which a criminal attorney for Paradyne allegedly informed counsel for one of the individual defendants that Paradyne's civil counsel "had an enormous amount of legal pads containing interview notes." Counsel for Paradyne deny that they have engaged in any improper activities
 
 
 [6]
 The government raises two additional contentions regarding counsel for Siegrist. First, the government claims that Siegrist's failure to acknowledge an attorney-client relationship with Paradyne's civil counsel indicates that he could not make a knowing and intelligent waiver. Second, the government contends that because Siegrist cannot "waive" the attorney-client privilege of the prior clients of his attorney, he cannot as a matter of law waive the ethical conflict that arises from his counsel's prior representation of potential witnesses
 
 
 [7]
 The government has standing to seek disqualification of defense attorneys facing potential conflicts of interest due to the government's interest in preventing reversals of convictions on sixth amendment grounds, see, e.g., Garcia, supra, or due the obligation of its attorneys to bring to a court's attention any "possible ethical violation concerning a matter before [the] court." In re Gopman, 531 F.2d 262, 265-66 (5th Cir.1976)
 
 
 [8]
 Garcia is binding precedent in this circuit, see Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc) (adopting as precedent decisions of the former Fifth Circuit rendered prior to October 1, 1981), and has been followed consistently, see, e.g., United States v. Petz, 764 F.2d 1390 (11th Cir.1985)
 
 
 [9]
 The petitioners deny that any privileged information has been disseminated
 
 
 [10]
 Information subject to the attorney-client privileges of individual witnesses can be protected from dissemination at trial by allowing the witnesses themselves to claim the privilege in response to specific questions. See United States v. Jeffers, 520 F.2d 1256, 1265 (7th Cir.1975) (Stevens, J.), cert. denied, 423 U.S. 1066, 96 S.Ct. 805, 46 L.Ed.2d 656 (1976); United States v. White, 743 F.2d 488, 496 (7th Cir.1984) (Flaum, J., concurring) (witness must "take the stand and refuse to answer any questions that he perceives violate his privilege")
 
 
 [11]
 Nor, contrary to the government's assertions, is the ethical dilemma faced by counsel for Siegrist irresolvable. Siegrist's counsel indeed has an ethical obligation to protect the confidences of prior clients who have not waived their attorney-client privileges. But the ethical obligation to represent Siegrist "zealously" is limited by "the bounds of the law, which includes Disciplinary Rules." Model Code EC 7-1. The attorney thus can both represent Siegrist and maintain the confidences of his previous clients without offending any ethical standards
 
 
 [12]
 The American Bar Association's Model Code of Professional Responsibility states:
 [A] lawyer shall not knowingly:
 (1) Reveal a confidence or secret of his client.
 (2) Use a confidence or secret of his client to the disadvantage of his client.
 (3) Use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure.
 DR 4-101(B) (emphasis added).
 
 
 [13]
 The government argues primarily that a duty of confidentiality adheres to the current defense counsel because Paradyne's civil counsel have continued to participate in the criminal trial as "de facto co-counsel." This participation, the government contends, results in a presumptive conflict analogous to that which exists whenever any member of a firm is in an adversarial position to someone the firm represents. See Model Code of Professional Responsibility DR 5-105(D). In addition to being unsupported in law, such a theory is logically flawed. First, the theory appears based more on a concern for protecting the privileges of witnesses than for promoting the principles underlying the sixth amendment. Should the government succeed in having current counsel disqualified under the "de facto co-counsel" theory, the threat of disqualifications on these grounds could be prevented in the future only by prohibiting any exchange of information between law firms that represent a corporate entity and/or connected individual. The resulting high financial costs for duplicative legal efforts could in many cases effectively preclude for both the corporation and the individuals the representation at trial guaranteed by the sixth amendment. The danger of unnecessary financial costs is particularly great where, as here, the government's motion for disqualification is filed months after trial preparation has begun
 To the extent that the government's "de facto co-counsel" theory is based on a desire to give added protection to the attorney-client privilege, its impact would be counterproductive. If attorneys were under a duty to protect the privileges of clients of their "de facto co-counsel," the "co-counsel" could divulge to these attorneys the confidences of their clients without violating any ethical restrictions, as is now the case within a single firm. By contrast, so long as the duty of confidentiality remains limited to the firm actually representing an individual, that firm may not disclose privileged information even to other firms with which they are working closely on matters for a common client.
 The final and perhaps most significant objection to the government's "de facto co-counsel" theory is that it is too amorphous for judicial administration. The government has offered no principled guidelines for determining why or when one set of attorneys might be disqualified from representing a client because of the current or prior participation of other firms. Presumably, the government would have counsel disqualified if they possess an indeterminate critical mass of privileged information. Such an uncertain rule would affect adversely the sixth amendment right to counsel, the protection accorded privileged information, and the ability of the courts to conduct criminal trials with relative efficiency.
 
 
 [14]
 The government claims alternatively that even if defense counsel do not suffer from an actual conflict of interest, their representation of their clients would be impaired in violation of the sixth amendment because they could not use at trial the privileged information they possess. We disagree. Because defense counsel are under no duty to protect the confidences of non-clients, they would not be forced to steer wide of any avenues of questioning that might implicate the attorney-client privilege. Accordingly, the inability of defense counsel to use privileged information would not more impair their representation than would their knowledge of any other information inadmissible as evidence. Moreover, as any other counsel that might be retained would not even have knowledge of the privileged information, they hardly could be more "effective" than current counsel
 
 
 [15]
 For similar reasons, defense counsel cannot be disqualified as an exercise of the district court's limited authority to avoid an appearance of impropriety. Current defense counsel are not themselves accused of divulging the confidences of their clients or of committing any other "specifically identifiable impropriety." Accordingly, the government's allegations do not meet the threshold requirement of the two-prong test established in Woods v. Covington County Bank, 537 F.2d 804 (5th Cir.1976), for disqualifying attorneys on grounds of apparent impropriety. See United States v. Hobson, 672 F.2d 825 (11th Cir.1982) (applying Woods test)
 
 
 [16]
 The right to counsel of one's choice is not absolute. The right does not override the broader societal interests in the effective administration of justice, see, e.g., United States v. Silva, 611 F.2d 78 (5th Cir.1980), or in the maintenance of "public confidence in the integrity of our legal system," Hobson, 672 F.2d at 828. But the right yields only to broader societal interests: it cannot be denied by a court unilaterally as a means to protect other sixth amendment rights of a defendant. The Constitution grants defendants the prerogative of choosing, knowingly and voluntarily, the right to retain chosen counsel over the right to effective representation free from conflict of interest. See, e.g., Garcia, supra, 517 F.2d at 276-77 & n. 3; cf. Faretta v. California, 422 U.S. 806, 815, 95 S.Ct. 2525, 2531, 45 L.Ed.2d 562 (1975) (upholding constitutional right to waive right to counsel altogether)
 
 
 [17]
 At a pre-trial Garcia hearing, there is always an element of speculation as to the potential manifestations at trial a conflict of interest arising from the prior representation of a witness. Cf. Flanagan v. United States, 465 U.S. 259, 268, 104 S.Ct. 1051, 1057, 79 L.Ed.2d 288 (1984) (effect of disqualification of attorney "cannot be fairly assessed until the substance of the prosecution's and the defendant's cases is known"). Where, however, it is unknown what type of conflict a particular attorney may face, the defendant cannot sufficiently assess the "potential perils" to make a knowing and intelligent waiver. See United States v. Padilla-Martinez, supra (disqualification proper where attorney hired to represent multiple defendants "refuses to or is unable to disclose the party or parties who hired him and the interest he has been employed to protect")
 
 
 [18]
 Because the right to conflict-free counsel effectively can be waived without knowledge of the exact details of any possible conflict, the government's contentions regarding Siegrist's denial of his previous representation are without merit. The government claims that Siegrist's refusal to recognize prior representation by Paradyne's civil counsel indicates that he does not understand the nature of the attorney-client privilege. A full understanding of the attorney-client privilege is unnecessary, however, so long as Siegrist is aware that his current representation might be impaired by the duty of his attorney not to use the confidences of previous clients