**UNITED STATES of America**

v.

**Edilberto J. MIRANDA, Defendant.**

No. 95–482–CR.

United States District Court,
S.D. Florida.

May 14, 1996.

Mary V. King, Assistant United States Attorney, Miami, FL, for plaintiff.

Edward R. Shohat, Miami, FL, for defendant.

### ORDER GRANTING GOVERNMENT'S MOTION TO DISQUALIFY COUNSEL

HIGHSMITH, District Judge.

THIS CAUSE came before the Court upon the government's motion to disqualify Edward Shohat, Esq. from representing Defendant Edilberto J. Miranda in this action. The Court held hearings on this matter on April 23, 1996 and May 10, 1996. Having received documentary and testimonial evidence, having heard arguments of counsel, and being otherwise fully advised in the premises, the Court grants the government's motion.

### PROCEDURAL BACKGROUND

On December 13, 1995, the grand jury returned an indictment against Defendant Edilberto J. Miranda. The indictment charges Miranda with conspiracy to conduct money laundering transactions involving proceeds from drug trafficking. The time span of the alleged conspiracy is September, 1989 through July, 1991. The indictment also includes twenty-two substantive counts, charging Miranda with various money laundering transactions involving real estate, cashier's check deposits into securities accounts, wire transfers and bank deposits, all property alleged to constitute proceeds from drug trafficking. These money laundering offenses allegedly took place from June, 1990 through May, 1991. Finally, the indictment alleges that property of the defendant, consisting of $1.9 million, plus a parcel of real estate, is subject to criminal forfeiture.

Since the time of his arrest on February 7, 1996, Miranda has been represented in this case by Edward Shohat, Esq. The government claims that such representation conflicts with Shohat's representation of Pedro Lopez. The government intends to call Lo-

pez as a witness at Miranda's trial, which is currently scheduled to commence on July 22, 1996.

## FACTUAL FINDINGS

At the initial hearing held in this matter on April 23, 1996, the government made a factual proffer in support of its motion for disqualification of defense counsel. During the course of the second hearing, held on May 10, 1996, the government submitted affidavits from Pedro Lopez and from Special Agent Linda Cianelli, the investigator in this case. In addition, the Court examined both Miranda and Lopez (the latter *in camera*); and permitted questioning of Cianelli by counsel for the parties. Having considered the evidence, and having assessed the credibility of the witnesses, the Court makes the following factual findings.

1. In August, 1991, Pedro Lopez (a/k/a Pedro Armando Lopez–Zayas) pleaded guilty and was convicted in the Southern District of Florida, in Case No. 90–196–CR–NESBITT, for his drug trafficking and money laundering activities as part of an organization headed by Julio Morejon–Pacheco.

2. Since his arrest in April, 1990, Lopez has been represented in all aspects of Case No. 90–196–CR–NESBITT by Edward Shohat, Esq. As more fully discussed below, the Court finds that Shohat's representation of Lopez in that matter is still ongoing.

3. After his guilty plea, Lopez entered into a cooperation agreement with the government. The agreement requires Lopez to provide his full and complete cooperation in criminal investigations and prosecutions, including the giving of truthful testimony, as may be required.

4. As a result of his cooperation, and pursuant to Fed.R.Crim.P. 35, Lopez received a reduction in the sentence previously imposed upon him in connection with Case No. 90–196–CR–NESBITT. At a hearing held on April 4, 1996, the Honorable Lenore

C. Nesbitt, United States District Judge, Southern District of Florida, reduced Lopez's term of imprisonment from twenty to eight years. According to Lopez's undisputed affidavit, the reduction was based, in part, upon his truthful cooperation with the United States in matters involving Edilberto Miranda, and others, and his anticipated testimony at Miranda's trial. Shohat represented Lopez at the Rule 35 hearing.[1]

5. According to Lopez's undisputed affidavit, he is prepared to testify at Miranda's trial that he has known Miranda for over ten years, and that he came to know Miranda through his own association with an extensive drug trafficking organization headed by Julio Morejon–Pacheco. Lopez claims to have detailed knowledge regarding Miranda's money laundering activities for Morejon–Pacheco and other drug traffickers since approximately 1985 until sometime after April, 1990, and anticipates providing detailed testimony regarding such activities at Miranda's trial.

6. The Court finds that this proffer supports the government's posture that Lopez's testimony is essential in helping prove the following elements at trial: the defendant's criminal knowledge and intent concerning the money laundering charges; and the fact that such transactions involved the proceeds of drug trafficking. Thus, the Court rejects Shohat's attempts to marginalize Lopez's anticipated testimony, both temporally and substantively, by characterizing such testimony as "not heartland testimony" and, at best, "404(b) testimony".

7. Lopez further avers that, during a government debriefing conducted in January, 1992, he described his own involvement, as well as that of Morejon–Pacheco and others, in money laundering activities with Miranda and others. Shohat, who was present at the debriefing as Lopez's counsel, left the interview room when Lopez began to discuss Miranda.[2]

---

1. In his affidavit, Lopez attributes the representations made to Judge Nesbitt regarding his cooperation to Shohat. At the hearing before this Court, Shohat denied having made the representations, attributing them to the Assistant United States Attorney. Shohat concedes, however, that in his role as Lopez's counsel at the Rule 35 hearing, his silence amounted to an endorsement of the government's proffer.

2. Lopez's affidavit, corroborated by his *in camera* testimony, differs from Shohat's statements to the Court regarding the reasons given by Sho-

8. According to Lopez, in late 1993 he learned from Shohat that Miranda had asked Shohat to represent him in a legal matter, but that Shohat had turned down Miranda's request because he felt he had a conflict of interest. At that time, Shohat assured Lopez that he was Lopez's lawyer.

9. Shohat now takes the position that, for all practical purposes, his representation of Lopez concluded with the granting of the government's Rule 35 motion for reduction of Lopez's sentence. Shohat does not discount the potential for continued representation should matters arise in connection with Lopez's custody. According to Shohat, however, "nothing he can do can negatively affect" Lopez at this juncture.

10. Shohat's perception of the status of his representation of Lopez significantly differs from Lopez's perception. In examining Lopez *in camera*, the Court found him both candid and credible. Lopez exhibited great respect and admiration for Shohat, as well as confidence in his professional abilities. Lopez's understanding is that he is still represented by Shohat. Lopez is worried about Shohat, his attorney, representing Miranda, a person about whom Lopez has not only given information, but against whom he will testify at trial.

11. The Court is deeply troubled by these diverging perceptions. The Court is even more troubled by Shohat's and Lopez's differing versions of an interview that took place during the period of time that elapsed between the two hearings held by the Court. According to Lopez, Shohat visited him at the Federal Detention Center on April 26, 1996, three days after the first hearing. Lopez states that, at that time, he fully discussed with Shohat the details of his anticipated trial testimony. As previously noted, Lopez still considers Shohat to be *his* attorney. Shohat, on the other hand, stated to the Court that his visit to Lopez was in his role as *Miranda*'s attorney. He further claims to have informed Lopez that his representation was concluded. Unlike the two minor inconsistencies mentioned above, this third contradiction between Shohat's and his client's versions of the facts requires reconciliation. The distasteful task of assessing the credibility of an officer of the court, vis-a-vis that of his client (someone whom the Court has found both candid and credible), cannot be sidestepped. The Court finds that, had Shohat's statement to Lopez regarding the status of his representation been as clear as he purports it to have been, Lopez would not have remained under the impression, as articulated to the Court, that Shohat still represents him.

12. The Court also has difficulty accepting Shohat's assessment that, even if technically ongoing, his representation of Lopez has ceased for all practical purposes. Lopez anticipates testifying on behalf of the government at Miranda's trial. It is undisputed that the granting of the Rule 35 motion was predicated, at least in part, upon the expectations of the government regarding such testimony. Thus, by testifying at Miranda's trial, Lopez will be performing a contractual duty owed by him to the government under the cooperation agreement negotiated by Shohat on his behalf. Because Shohat has represented Lopez during previous testimonial appearances and debriefings in furtherance of the cooperation agreement, the Court finds reasonable Lopez's obvious expectation that Shohat continue to represent him during the course of Miranda's trial.

13. The Court also finds it difficult to rule out, as Shohat does, the potential that attorney client confidences imparted by Lopez to Shohat would be jeopardized in the course of Shohat's continued representation of Miranda in this case.[3] Indeed, this problem may have already occurred. Shohat claims to have visited Lopez on April 26, 1996 in his role as "Miranda's attorney". Therefore,

hat for stepping out at this juncture of the debriefing. According to Lopez, Shohat stated that he was a personal friend of Miranda's family. According to Shohat, he simply told Lopez that he knew of Miranda. Given the undisputed fact that Shohat walked out when Miranda became the subject of the debriefing, the Court need not resolve the inconsistency regarding the precise reason he gave Lopez for his actions.

3. At the hearing, Shohat flatly stated that he has received no attorney-client confidential information from Lopez that would have any impact upon Miranda's case.

Shohat would not view the information obtained at that visit as privileged. Yet, that same visit was perceived by Lopez as a visit by "his" attorney, and justifiably so in the Court's view. Therefore, the same information that Shohat may view as nonprivileged is entitled to protection when seen through Lopez's eyes.

14. With regard to Agent Cianelli's affidavit and testimony, the Court finds her to be credible and unbiased. Agent Cianelli's statements further support the government's position that Lopez's anticipated testimony is neither superfluous nor tangential to the government's case against Miranda.

15. Based on all of the foregoing findings, the Court concludes that Shohat's representation of Lopez is *substantially related* to his representation of Miranda. Therefore, the Court finds that Shohat's continued representation of Miranda poses an *actual* conflict of interest.

16. During its *in camera* examination of Lopez, the Court specifically addressed the issue of waiver. Based on Lopez's responses to the Court's questions, the Court concludes that Lopez does not waive his right to conflict free representation by acceding to Shohat's representation of Miranda. Lopez unequivocally stated to the Court that he wants to keep Shohat as his attorney and is not willing to allow Shohat to represent Miranda by waiver. The Court accepts this statement as clear evidence of Lopez's position on the matter.

17. For the purpose of developing a complete factual record, the Court also examined Miranda regarding the issue of waiver. Based on Miranda's testimony and his signing, in open court, of a waiver form prepared by the Court, the Court concludes that Miranda has voluntarily and knowingly waived his right to conflict-free representation. The signed waiver shall be made a part of the record in this case.

**4.** The Eleventh Circuit has left open the question of whether the erroneous denial of the right to counsel of choice is *per se* reversible error; i.e., with no requirement that prejudice be shown. *Ross,* 33 F.3d at 1524 n. 30. When confronted

## STANDARD OF REVIEW

The Sixth Amendment of the United States Constitution guarantees two correlative rights: "(1) the right to be represented by counsel of choice and (2) the right to a defense conducted by an attorney who is free of conflicts of interest." *United States v. Ross,* 33 F.3d 1507, 1523 (11th Cir.1994) (citing *Wheat v. United States,* 486 U.S. 153, 160, 108 S.Ct. 1692, 1697–98, 100 L.Ed.2d 140 (1988)). A court confronting a motion for disqualification of chosen counsel must balance these two constitutional rights. *Ross,* 33 F.3d at 1523. In addition, "Federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat,* 486 U.S. at 160, 108 S.Ct. at 1698.

A decision regarding a motion for disqualification, whether granted or denied, is not immediately appealable. *United States v. Camisa,* 969 F.2d 1428 (2d Cir. 1992). If the defendant is convicted, the decision is subject to review, regardless of outcome, for insufficient assistance of counsel. The standard for such review is *abuse of discretion. Wheat,* 486 U.S. at 161–64, 108 S.Ct. at 1697–1700. As noted by the Supreme Court in *Wheat,* trial courts addressing disqualification issues "face the prospect of being whip-sawed by assertions of error no matter which way they rule." *Wheat,* 486 U.S. at 161, 108 S.Ct. at 1698. For this reason, a disqualification decision is judged from the perspective of the trial court at the time of the ruling. *Ross,* 33 F.3d at 1523–24 n. 29 (citing *Wheat,* 486 U.S. at 162–64, 108 S.Ct. at 1698–1700).[4]

## DISCUSSION

Rule 11.1(C) of the Local Rules for the Southern District of Florida provides: "The standards of professional conduct of members of the Bar of this Court shall include the current Rules Regulating The Florida Bar."

with this issue, the Eleventh Circuit may follow the *per se* standard already adopted by the First, Third, Seventh, Ninth, and Tenth Circuits. *United States v. Urbana,* 770 F.Supp. 1552, 1556 n. 9 (S.D.Fla.1991).

Rule 4–1.7 of the Florida Bar's Rules of Professional Conduct provides:

> (a) A lawyer shall not represent a client if the representation of that client will be directly adverse to the interest of another client, unless:
>
> (1) the lawyer reasonably believes the representation will not adversely affect the lawyer's responsibilities to and relationship with the other client; and
>
> (2) each client consents after consultation.
>
> (b) A lawyer shall not represent a client if the lawyer's exercise of independent professional judgment in the representation of that client may be materially limited by the lawyer's responsibilities to another client ... unless the lawyer reasonably believes the representation will not be adversely affected; and the client consents after consultation.

Rule 4–1.9(a) of the Florida Bar's Rules of Professional Conduct provides:

> A lawyer who has formerly represented a client in a matter shall not thereafter represent another person in the same or a substantially related matter in which that person's interests are materially adverse to the interests of the former client unless the former client consents after consultation.

In *United States v. Ross,* the Eleventh Circuit has incorporated the foregoing ethical standards into the analysis which must be performed by a court addressing a motion for disqualification:

> The need for fair, efficient, and orderly administration of justice overcomes the right to counsel of choice where an attorney has an actual conflict of interest, such as when he has previously represented a person who will be called as a witness against a current client at a criminal trial. *See United States v. Casiano,* 929 F.2d 1046, 1052 (5th Cir.1991). When an actual conflict of interest exists, the client is denied effective assistance of counsel, and the attorney may be disqualified. Indeed,

even a potential conflict suffices for disqualification....

> In deciding whether the actual or potential conflict warrants disqualification, we examine whether the subject matter of the first representation is substantially related to that of the second. Our goal is to discover whether the defense lawyer has divided loyalties that prevent him from effectively representing the defendant.

*Ross,* 33 F.3d at 1523.

■ The Court has determined, both factually and legally, that the subject matter of Shohat's representation of Miranda, the defendant in this case, is substantially related to the subject matter of his representation of Lopez, who will testify against Miranda at Miranda's trial. The Court also finds, both factually and legally, that the interests of Lopez, the cooperating government witness, are adverse to those of Miranda, the defendant against whom Lopez is expected to testify. Pursuant to the above-cited guidelines, Shohat must withdraw from representing Miranda, unless *both* Lopez and Miranda consent.[5] Miranda has expressed his consent to continue being represented by Shohat, after having been apprised of the perils of such representation. Lopez, however, has expressly stated that he does not consent to Shohat's continued representation of Miranda. Absent Lopez's consent, Shohat must withdraw.

Shohat's persistence in representing Miranda in the face of Lopez's objection gives the Court pause. Even in cases where both clients waive their respective rights to conflict-free representation, a court may decline the proffers of waiver. *Wheat,* 486 U.S. at 162, 108 S.Ct. at 1698–99. As noted by the United States Supreme Court,

> When a trial court finds an actual conflict of interest which impairs the ability of counsel to conform with the ABA Code of Professional Responsibility, the court should not be required to tolerate an inadequate representation of a defendant. Such representation not only constitutes a breach of professional ethics and invites disrespect for the integrity of the court,

---

5. The conclusion is the same whether Shohat's representation of Lopez is seen as still ongoing, as found by the Court, or as terminated for all practical purposes as advocated by Shohat.

but it is also detrimental to the independent interest of the trial judge to be free from future attacks over the adequacy of the waiver or the fairness of the proceedings in his own court and the subtle problems implicating the defendant's comprehension of the waiver.

*Wheat,* 486 U.S. at 162, 108 S.Ct. at 1699 (citing *United States v. Dolan,* 570 F.2d 1177, 1184 (3d Cir.1978)). These independent concerns obviously become more weighty in situations, such as this, where only one client waives his right to conflict-free representation.

The Court must regretfully conclude that Shohat fails to comprehend what is obvious to the Court; i.e., that we have a very disturbing issue of *perception* in this case; both in terms of public perception of the criminal justice system and in terms of perception regarding the rights of Lopez. The Court cannot fail to note that, while Miranda was present to hear Shohat's assurances to the Court that he is *now* Miranda's lawyer, Lopez, who still perceives Shohat to be his lawyer, did not have the same benefit. Moreover, the Court has been put to the repugnant task of resolving credibility issues pitting counsel against his client. Indeed, the Court cannot help but wonder: Who, in Shohat's view, represented Lopez at the disqualification hearing? It appears that the task of protecting the interests of one of Shohat's clients was, by default, left to the Court.[6]

█ Finally, the Court addresses the compromise solution offered by Shohat through the use of "back up" counsel to handle the matters related to Lopez. The plan, as outlined in the notice of supplemental authority filed after the May 10, 1996 hearing pursuant to the Court's instructions, runs as follows:

> The Defendant has offered to utilize the services of an independent lawyer, Paul Lazarus, Esq., to would (sic) sit with defense counsel during the entire trial to handle any and all aspect of the trial relating to Mr. Lopez. This would include, but be not limited to: investigating Mr. Lopez, cross-examining Mr. Lopez, making any remarks in closing argument relating to Mr. Lopez, and making all legal argument relating [to] Mr. Lopez's testimony. Correlatively, there would [be] erected a complete Chinese wall between Mr. Shohat and Mr. Lazarus in connection with all matters relating to Mr. Lopez.

Notice of Supplemental Authority, at ¶ 1.

The Court has reviewed closely the cases cited by counsel as supportive of this scheme. Neither case presents a situation where such a plan was actually used. In *United States v. Agosto,* 675 F.2d 965 (8th Cir.1982), the Eighth Circuit reversed the district court's order of disqualification of counsel.[7] The appellate court remanded the case with instructions for "the district court to consider whether there exists a means of eliminating the potential conflict less burdensome than disqualification." *Agosto,* 675 F.2d at 973. As part of its inquiry, the district court was directed to determine whether co-defendants Newstrum and Bruins, who had formerly been represented by current counsel for co-defendant Gustafson, attorney Walters, were willing to consent to such current representation and use of back-up counsel for purposes of cross-examining Newstrum and Bruins at trial. According to the Eighth Circuit, "If they do not consent, however, and there is a clear showing of adverse interests, then we concur in the district court's exercise of discretion and disqualify attorney Walters." *Id.* at 974. On remand, the district court found a clear showing of adversity of interest; and, upon examining Newstrum and Bruins, determined that both emphatically declined to consent to their former counsel's representation of co-defendant Gustafson with the concomitant use of back-up counsel. *United*

---

**6.** At the hearing, in response to the Court's inquiry, Shohat conceded that "on the surface" his representation of Miranda presents problems, but he further argued that upon close scrutiny under the principles articulated by the Eleventh Circuit in *Ross,* those problems disappear. The Court has viewed this matter through the *Ross* lens and finds problems both at the surface and at bottom. The public, whose perception is also a factor in this analysis, cannot be expected to look below the surface.

**7.** It appears that the Eighth Circuit, unlike the Second Circuit in *Camisa,* entertained an interlocutory appeal of the disqualification order.

*States v. Agosto,* 538 F.Supp. 1149, 1151 (D.Minn.1982). Pursuant to the appellate courts' instructions, the district court then concluded that disqualification was proper. Given Lopez's non-consent to Shohat's representation of Miranda, and the Court's determination of the existence of an actual conflict of interest, permitting the use of back-up counsel in this case would violate the parameters within which the Eighth Circuit gave theoretical approval for such a scheme. The second case cited to the Court, *United States v. Jeffers,* 520 F.2d 1256 (7th Cir.1975), provides no better support for counsel's proposal. It simply mentions the failure of defense counsel to have suggested, in the proceedings below, the use of back-up counsel.

Because Shohat's compromise proposal is not supported by the case law upon which counsel relies, the Court rejects the back-up counsel alternative to disqualification as inappropriate for this case. Moreover, the addition of Lazarus to the defense team at this juncture would not cure the problems of perception discussed earlier in this opinion. Indeed, it is the Court's view that such an approach would increase, rather than alleviate the concerns with the public's perception regarding the fairness of these proceedings and the integrity of the judicial process; and with the rights of Lopez, Shohat's other client.

## CONCLUSION

Based on the foregoing considerations, it is

ORDERED AND ADJUDGED as follows:

(1) The government's motion to disqualify counsel is GRANTED.

(2) Edward Shohat, Esq. is DISQUALIFIED from continued representation of Defendant Edilberto Miranda in these proceedings.

(3) The defendant has twenty days from the date of this order to obtain new counsel and to have such counsel enter an appearance in this action.