**UNITED STATES of America**

v.

**Geries HANANIA a/k/a George Hanania.**

**No. 96–197–CR–J–10(C).**

United States District Court,
M.D. Florida,
Jacksonville Division.

Jan. 29, 1997.

Kimberly A. Selmore, Asst. U.S. Atty., Jacksonville, FL, for U.S.

Curtis S. Fallgatter, Jacksonville, FL, for Geries Hanania.

## ORDER REGARDING CONFLICT OF DEFENDANT'S COUNSEL

CORRIGAN, United States Magistrate Judge.

This case is before the Court on the United States' Notice of Conflict of Interest (Doc. # 33) and the United States' Amended Notice of Conflict (Doc. # 35) which contend that defendant's counsel, Curtis Fallgatter, has a "significant conflict of interest in this case which dictates that he should withdraw as counsel for the defendant" because he also represents the Brooks, a husband and wife who will be witnesses for the government at trial. The Court construes the notice and amended notice as a motion by the United States to disqualify defendant's counsel.

On January 13, 1997, the Court conducted a lengthy *Garcia* hearing as to the factual basis of the alleged actual or potential conflicts of interest and advised the defendant personally of his right to effective assistance of counsel, including the right to be represented by separate, independent counsel who is conflict-free. The Court apprised the defendant of the facts underlying the possible conflicts of interest and of the possible adverse consequences of Mr. Fallgatter's continued representation of defendant. Upon inquiry by the Court, defendant stated that he fully understood the potential conflict of interest issues, but that he nevertheless wanted Mr. Fallgatter to represent him. The Court found the defendant to be intelligent and articulate and fully capable of making a decision whether to waive his right to conflict-free counsel. At the conclusion of this first hearing, the Court found the defendant had knowingly, freely, voluntarily and intelligently waived his right to conflict-free effective assistance of counsel.

Exercising its obligation under *Wheat v. United States,* 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988), the Court advised defendant that the Court had an independent duty to determine whether it would accept defendant's waiver and took the matter under advisement. While the Court was considering the matter, the government filed the amended notice of conflict of interest (Doc. # 35) proffering additional factual information which it contended required Mr. Fallgatter's disqualification. Defendant, by Mr. Fallgatter, has filed two responses to the government's filings (Docs.# 36, # 38).

Because of the importance of the matter, the need to address the issues raised by the government's amended notice, and in the interest of making absolutely certain the defendant was fully apprised of all of the issues and consequences concerning his decision whether to keep Mr. Fallgatter as his counsel, the Court conducted an additional hearing on Tuesday, January 21, 1997, at which the defendant was present. Following a full exploration of the conflict issue at this second hearing, the Court again apprised defendant of the facts giving rise to Mr. Fallgatter's potential conflicts of interest and discussed fully with defendant the possible adverse consequences to defendant's position at trial of Mr. Fallgatter's continued representation of defendant, including the Court's concern that Mr. Fallgatter would not be able to effectively cross-examine the Brooks because of his attorney-client relationship with them. The Court urged defendant to consider the matter very carefully before making a decision whether to waive his Sixth Amendment right to be represented by conflict-free counsel. The Court again advised defendant of his right to conflict-free counsel, including his right to obtain a different attorney; his right

to court-appointed counsel if he could not afford another attorney; his right to consult with another attorney concerning his decision about retaining Mr. Fallgatter; and his right to have additional time in which to make a decision. Defendant, as he had at the first hearing, stated he understood these rights and asked the Court for an opportunity to speak privately with Mr. Fallgatter. The Court recessed and defendant and Mr. Fallgatter conferred privately for 25 minutes.

Thereafter, defendant returned to Court and stated that he fully understood the potential conflict of interest problems but that he nevertheless wanted Mr. Fallgatter to represent him. When asked to state in his own words why he desired to retain Mr. Fallgatter defendant stated that he wanted Mr. Fallgatter to continue to represent him because he felt Mr. Fallgatter was an able attorney and he trusted Mr. Fallgatter's judgment. The Court again found the defendant to be intelligent, articulate and fully capable of making the decision as to the waiver of his rights. At the conclusion of the second hearing, the Court found the defendant had knowingly, freely, voluntarily and intelligently waived effective assistance of counsel due to any conflict of interest on Mr. Fallgatter's part. The Court also orally accepted defendant's waiver and denied the government's motion to disqualify, promising this written opinion would follow.[1]

### Findings of Fact

1. On December 18, 1996, the government filed a three count drug conspiracy indictment against defendant, Geries Hanania, and his brother, co-defendant, Samer Hanania (Doc. #1). Defendant, Geries Hanania, is charged in Counts 1 and 3 and is represented by Curtis Fallgatter, Esquire.

2. Before the return of the indictment, Christina and Donnie Brooks, two unindicted co-conspirators, agreed to cooperate and testify on behalf of the government. In exchange for their cooperation, the government entered into a "use immunity" agreement with the Brooks. At the time of the immunity agreement, the Brooks were represented (and continued to be represented) by Mr.

Fallgatter. At trial, the government expects the Brooks to testify about their involvement in the alleged conspiracy and expects the Brooks' testimony to directly implicate the defendant's codefendant and brother, Samer Hanania, in this conspiracy. Although the government's original position was that "the Brooks' testimony will not directly implicate Geries Hanania in this conspiracy" but that "their testimony may indirectly implicate the defendant [Geries Hanania] in this illegal drug conspiracy" (government notice, Doc. #33 at 2), the government's amended notice contends that Mr. Brooks will testify that "although he had no direct dealings with the defendant [Geries Hanania], the defendant was present when he [Mr. Brooks] engaged in drug transactions with Samer Hanania" (government's amended notice, Doc. #35 at 1).

3. At the initial hearing, the government proffered that Mr. and Mrs. Brooks' will testify that they were employed as housekeepers in the home shared by both defendants Samer and Geries Hanania; that in late 1995 or early 1996, the Hanania brothers traveled out of the country and that Samer Hanania employed the Brooks to maintain Samer's drug operation while he was out of the country. Although the Brooks will apparently testify that their drug dealings were with Samer Hanania only, the government proffered that the Brooks would testify that defendant, Geries Hanania, lived at the same residence with his brother and possibly was present in the house when Mr. Brooks engaged in drug transactions with Samer. The government asserted that, although the Brooks' testimony will not directly implicate Geries Hanania in the conspiracy, the testimony of other witnesses at trial will do so.

4. At the second hearing on January 21, 1997 the government proffered that Donnie Brooks will testify to three instances when defendant was "present" during a drug transaction between Donnie Brooks and co-defendant Samer Hanania: once defendant was in the "great room" where the transaction allegedly took place; once defendant was in the adjoining dining room; and once defendant was in the adjoining computer room.

1. The Court made oral findings at the hearing which are hereby incorporated by reference.

Mr. Brooks will also testify defendant's car was at the residence during a drug transaction between Mr. Brooks and co-defendant, and that on another occasion Samer made statements to the effect that his brother, Geries, was in the residence. The government also proffered that Mr. Brooks will indirectly implicate defendant in the alleged drug conspiracy because "shortly after" a drug transaction, Samer would converse with defendant in Arabic, ostensibly to conceal the nature of their conversation. Mr. Brooks will also testify he received sums of cash from Samer and subsequently defendant would give him bills (apparently household bills) to pay.

5. Mr. Fallgatter responded that the issue of whether defendant was present at the house (where he lived) will not be disputed at trial; therefore it will not be necessary for him to cross-examine the Brooks on this point. He also filed a statement signed by both of the Brooks (Doc. # 42) in which the Brooks state that they did not engage "in any drug related conversations or transactions with Geries Hanania ..." Finally, Mr. Fallgatter said that the fact that the co-defendants spoke Arabic, their native tongue, to each other will not be disputed at trial (though the government's sinister interpretation of this fact will be).

6. Mr. Fallgatter represented Mr. and Mrs. Brooks in connection with the use immunity agreement entered into between the government and the Brooks. Mr. Fallgatter still represents the Brooks, although he does not anticipate the Brooks needing the assistance of legal counsel during their testimony. He stated that if the Brooks did need counsel, he could arrange for separate counsel to represent the Brooks during their testimony at trial.

7. Mr. Fallgatter also stated that, before accepting the representation of Geries Hanania, he fully discussed the proposed representation with the Brooks who gave their consent. In its amended notice, the government questioned whether the Brooks had in fact given "final consent" to Mr. Fallgatter representing the defendant (Doc. # 35). Therefore, the Court directed Mr. Fallgatter to file either a sworn statement or affidavit from the Brooks regarding their consent. On January 17, 1997, Mr. Fallgatter filed a signed written consent of Donnie and Christine Brooks (Doc. # 42) to which the government voiced no objection.

8. Mr. Fallgatter represented that he was aware of no confidential or attorney-client information he had received from the Brooks which would be relevant to his defense of Geries Hanania and which he would be precluded from using because of his attorney-client relationship with the Brooks.

9. The government's original notice of conflict raised the specter that Mr. Fallgatter's "conduct in negotiating" the use immunity agreement "on behalf of the Brooks" might be an issue at trial, meaning that Mr. Fallgatter might be a witness at trial. However, at both hearings, the government stated that the issue which gave rise to this concern had been resolved and the government did not foresee at this time that Mr. Fallgatter's conduct in negotiating the use immunity agreement would be an issue. At the second hearing, the government stated it did not foresee Mr. Fallgatter being called as a witness at trial. *See* Rule 4–3.7(a), *Rules Regulating the Florida Bar.*

10. Although the use immunity agreement will be introduced in evidence at trial, Mr. Fallgatter suggested and the government agreed that his name could be redacted from the agreement before it is placed in evidence or that the Court could fashion some other appropriate device to delete his identity. Alan Ceballos, Esquire representing co-defendant Samer Hanania, appeared at the second hearing and stated he had no objection to such redaction and was not aware of any problems or prejudice to his client (who was also present at the hearing) if Mr. Fallgatter continued to represent defendant. Finally, all parties agreed not to refer to Mr. Fallgatter's name when questioning the Brooks about the use immunity agreement (though the Court cautioned that there was no guarantee that Mr. Fallgatter's identity as the Brooks attorney would not be revealed at trial or that the jury would not be confused or influenced by that knowledge).

### Conclusions of Law

In determining whether to disqualify defense counsel, the Court must balance two Sixth Amendment rights: (1) the right to be represented by counsel of choice, and (2) the right to a defense by counsel who is free of conflicts of interest. *United States v. Ross*, 33 F.3d 1507, 1523 (11th Cir.1994), *cert. denied*, 515 U.S. 1132, 115 S.Ct. 2558, 132 L.Ed.2d 812 (1995) (citing *Wheat v. United States*, 486 U.S. 153, 108 S.Ct. 1692, 100 L.Ed.2d 140 (1988).) There is a presumption in favor of defendant's counsel of choice, and a court may disqualify that counsel only if continued representation creates either an actual or serious potential conflict of interest. *Wheat v. United States*, 486 U.S. 153, 164, 108 S.Ct. 1692, 1699, 100 L.Ed.2d 140 (1988) ("a showing of a serious potential for conflict" overcomes the presumption in favor of defendant's counsel of choice); *United States v. Ross, supra*. *Wheat* also recognized that such conflicts may be waived by the defendant and the Court has "substantial latitude" in deciding whether to accept or reject an otherwise valid waiver of conflict. *Id.* at 163, 108 S.Ct. at 1699. *See United States v. Garcia*, 517 F.2d 272, 276 (5th Cir.1975).[2]

A valid waiver does not require every detail of counsel's conflict be understood; potential conflicts of interest are by nature speculative. *In re Paradyne Corp.*, 803 F.2d 604, 611–12 (11th Cir.1986). "An otherwise valid waiver is effective if the defendant 'understands the details of his attorney's *possible* conflict and the *potential* perils of such conflict.'" *Id.* at 611. *U.S. v. Ard*, 731 F.2d 718, 725 (11th Cir.1984).

Even in the face of a valid waiver by a defendant, the Court has an independent obligation to determine whether an actual or potential conflict disables counsel from representing a defendant: "federal courts have an independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them." *Wheat*, 486 U.S. at 160, 108 S.Ct. at 1697.

An actual conflict exists when an attorney represents both a defendant and a witness for the government who will testify against that defendant. *United States v. McCutcheon*, 86 F.3d 187, 189 (11th Cir. 1996). Here, it is not clear that the Brooks will testify against *this* defendant (as opposed to his co-defendant brother). Thus, there is a potential rather than actual conflict of interest inherent in Mr. Fallgatter's representation.[3] The Brooks will apparently not directly implicate defendant Geries Hanania. They may, however, indirectly implicate him with their testimony of his presence in the household during drug transactions, his use of Arabic, and the other matters previously addressed. While Mr. Fallgatter says these will not be contested matters, the Court is nevertheless concerned about his ability to effectively cross-examine the Brooks at trial. However, the Court finds that these potential problems do not overcome the defendant's presumptive right to his counsel of choice. *See United States v. Rodriguez*, 982 F.2d 474 (11th Cir.), *cert. denied*, 510 U.S. 901, 114 S.Ct. 275, 126 L.Ed.2d 226 (1993); *United States v. Garcia*, 517 F.2d 272, 276–78 (5th Cir.1975); *United States v. Casiano*, 929 F.2d 1046, 1052–54 (5th Cir.1991).

Mr. Fallgatter's involvement with the use immunity agreement should not create a serious problem, with all parties agreeing that it is unnecessary to use Mr. Fallgatter's name in connection with the agreement and the government's statement that it does not foresee the need for Mr. Fallgatter to be a witness at trial.

The public's interest in the proper administration of justice should not be adversely affected by Mr. Fallgatter's representation. The defendant, the Brooks and the co-defendant have all consented to Mr. Fallgatter's continued representation of defendant and

---

2. Decisions of the former 5th Circuit rendered prior to October 1, 1981 are binding precedent in this Court. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

3. Even if there were an actual conflict of interest, that actual conflict could be waived. *United States v. Rodriguez*, 982 F.2d 474, 477 (11th Cir.), *cert. denied*, 510 U.S. 901, 114 S.Ct. 275, 126 L.Ed.2d 226 (1993); *United States v. Garcia*, 517 F.2d 272, 276–78 (5th Cir.1975).

the Court believes that the trial can be conducted with due regard for the appearance of propriety and the proper administration of justice. *Cf. United States v. Miranda,* 936 F.Supp. 945, 949–951 (S.D.Fla.1996) (disqualification required because attorney's witness client objected to attorney's simultaneous representation of defendant.)

 This case is in its infancy; neither the Court nor counsel is clairvoyant. The Court must decide this issue, not with the benefit of hindsight, but in the "murkier pretrial context ..." *Wheat,* 486 U.S. at 162, 108 S.Ct. at 1698. The Court has repeatedly explained to defendant that, despite the Court's best efforts to identify potential conflicts and adverse consequences of those conflicts for the defendant, no one can predict what problems may arise from Mr. Fallgatter's dual representation. The Court determines that the defendant understands the conflicts issue, the possible adverse consequences and his right to separate, conflict-free counsel and has validly waived, not once, but twice, his right to conflict-free counsel. The Court further finds that the potential problems of Mr. Fallgatter's dual representation do not overcome the defendant's presumptive right to counsel of his choice. Finally, the Court has independently reviewed the situation and concludes that disqualification of Mr. Fallgatter is not required to uphold the integrity of the proceedings or the proper administration of justice.

Therefore, it is now

**ORDERED:**

1. The waiver by defendant, GERIES HANANIA, of his Sixth Amendment right to conflict-free counsel is hereby accepted.

2. The United States Notice of Conflict of Interest (Doc. # 33) and United States Amended Notice of Conflict (Doc. # 35), which the Court construes as a Motion to Disqualify Defendant's Counsel, is hereby **DENIED.**